UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO. 00-6229

CIV - UNGARO - BENAGES

MAGISTRATE JUDGE
BROWN

BOEING EMPLOYEE'S CREDIT
UNION, a Washington corporation,

    Plaintiff,

vs.

P/V GLOBAL VILLAGE, O.N. 994536,
her engines, tackle and appurtenances, In rem,
and CHARLES E. THOMAS, In personam,

    Defendants.
_____/

## VERIFIED COMPLAINT IN ADMIRALTY, IN REM, PURSUANT TO RULE 9(H)

Plaintiff, BOEING EMPLOYEE'S CREDIT UNION, a Washington corporation, by and through the undersigned attorneys, sues the pleasure vessel GLOBAL VILLAGE, its engines, tackle and appurtenances, In rem, and CHARLES E. THOMAS, In personam, to foreclose the First Preferred Mortgage for the P/V GLOBAL VILLAGE and states as follows:

1.    This is an admiralty and maritime claim within the jurisdiction of this Court and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.    Plaintiff, BOEING EMPLOYEES' CREDIT UNION, is a Washington corporation operating as a Credit Union under a charter issued by the State of Washington, with its principal place of business in Tukwila, King County, Washington. All licenses, penalties and fees due have been paid.

3.    Plaintiff is informed and therefore believes that Defendant CHARLES E. THOMAS is presently a resident of Houston, Texas.

4.      The Defendant vessel, P/V GLOBAL VILLAGE, Official No. 994536, is a vessel duly documented under the laws of the United States. The vessel is owned by Defendant THOMAS. The vessel is presently moored in Pompano Beach, Florida and is now within this district and within the jurisdiction of this Court.

5.      On or about July 28, 19993, for valuable consideration, Defendant THOMAS made, executed, and delivered a promissory note to BOEING EMPLOYEES' CREDIT UNION. The note, which was in the principal amount of $250,005.00, provided for monthly payments of principal and interest of $2,109.89 with interest accruing at the initial rate of six percent (6.00%) per annum. The first payment was to be made on August 28, 1993 and a similar payment was to be made on the 28th day of each month thereafter until the total amount due was paid. Along with the note, on or about that same date, Defendant THOMAS made, executed and delivered to BOEING EMPLOYEES' CREDIT UNION a form entitled "Consumer Variable Rate Addendum: Consumer Loans." Under the term of this form, Defendant THOMAS agreed that the interest rate on the loan would be adjusted semi-annually. The note and the Variable Rate Addendum are referred to collectively herein as the "Promissory Note." A copy of the Promissory Note is attached hereto and incorporated herein by this reference.

6.      On or about July 27, 1983, in order to secure payment under the terms of the Promissory Note, Defendant THOMAS, in accordance with and pursuant to the provisions of the Ship Mortage Act of 1920, as amended, made, executed, and delivered a Preferred Mortgage of Vessel on the Defendant vessel P/V GLOBAL VILLAGE, Official No. 996536, (the "Mortgage") to BOEING EMPLOYEES' CREDIT UNION, as mortgagee. At that same time, all things required to be done on order to give the Mortgage the status of a preferred mortgage were done. The

Mortgage was recorded by the U.S. Coast Guard Vessel Documentation Office at the port of Seattle, Washington on August 18, 1993 in Book No. 93-8, page 282. A copy of the Mortgage is attached hereto and incorporated herein by this reference.

7.  Defendant THOMAS has breached the terms of the Promissory Note and of the Mortgage in that he failed to make all of the payment due on November 28, 1999 and has failed to make all of the payments due since then, which failures constitute breaches of the terms of the note and Mortgage. In spite of demand, Defendant THOMAS has failed to cure these defaults and has allowed them to continue.

8.  As of January 31, 2000, there was a total of $181,446.99 in unpaid principal and interest due and owing on the loan. At the rate of interest set out in the note, interest accrues at $36.1948 per day. Interest and costs are continuing to accrue.

9.  The Promissory Note provides that Defendant THOMAS has agreed to pay the costs of collection incurred by Plaintiff, including reasonable attorneys' fees, foreclosure costs and other costs of collection, in addition to paying the balance due on the loan.

10. Reasonable attorneys' fees in the case of default are $5,000.00. If this matter is contested, additional fees and costs will be incurred.

WHEREFORE, Plaintiff, BOEING EMPLOYEES' CREDIT UNION, prays for judgment as follows:

1.  That Plaintiff be adjudged the holder of the first preferred marine mortgage on the P/V GLOBAL VILLAGE, Official No. 994536, for the payment of:

    a.  $181,466.99 together with accruing interest from January 31, 200 at the rate set forth in the Promissory Note;

  b. Post-judgment interest, at the rate set out in the Promissory Note, from the date of entry of judgment until paid;

  c. All costs of this action, including charges for all fees for keepers and their costs incurred in this action and for all expenses for the arrest, movement, custody and sale of the Defendant vessel, her engines, tackle, apparel, furniture and equipment; and

  d. Reasonable attorneys' fees.

2. That process in due form of law issue against the Defendant vessel.

3. That this Court declare the lien of the Mortgage to be superior to all other liens which may exist against the vessel.

4. That the Mortgage be foreclosed and the Defendant vessel, P/V GLOBAL VILLAGE, Official No. 994536, her engines, tackle, apparel, furniture and equipment be sold in accordance with the law, that the proceeds of the sale be applied and delivered to pay demands and claims of Plaintiff in the amount and to the extent set forth herein, together with all costs and attorneys' fees, and that it be declared that any and all persons, firms or corporations claiming any interest in the Defendant vessel be forever foreclosed of and from all rights of equity or redemption of claim in or to the Defendant vessel.

5. That, at the sale of the P/V GLOBAL VILLAGE, Official No. 994536, her engines and equipment, etc., Plaintiff be permitted to bid without cash deposit, up to the extent of its judgment. In the event that such bid is the highest and best bid, that such amount be credited on the judgment entered herein.

6. That Plaintiff have and recover from Defendant THOMAS any deficiency after the application and delivery of the net proceeds of sale on the Defendant vessel, her engines, equipment,

etc. on the judgment above requested.

7.  That Plaintiff have such other and further relief in the premises and in law and justice as it may be entitled to receive.

Dated this _16th_ day of _February_, 2000.

Respectfully submitted,

HORR, LINFORS, SKIPP & NOVAK, P.A.
Attorneys for Defendants
One Datran Center, Suite 1001
9100 South Dadeland Boulevard
Miami, Florida 33156
Telephone: (305) 670-2525

_____
NILS LINFORS, JR
Florida Bar No.: 193257

# PROMISSORY NOTE

Account: 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

Note Date: JULY 28, 1993
Sum of: TWO HUNDRED FIFTY THOUSAND AND FIVE AND 00/100 DOLLARS   Dollars ($250,005.00)
Interest Rate: SIX AND 00/100   percent (6.00 %) per annum; Term 180 MONTHS
Payment Frequency: MONTHLY   Payment Commencing AUGUST 28, 1993
Payment Amount: TWO THOUSAND ONE HUNDRED NINE AND 89/100 DOLLARS   Dollars ($2,109.89) each.

Alternate Payment Schedule: _____

In this Promissory Note, the words "YOU" and "YOUR" mean each and all of those who have signed it. You promise to pay to the Boeing Employees Credit Union, herein after called "Credit Union", at its office the above sum, plus interest on the unpaid balance at the above noted interest rate. You will make the above payment each and every payment date, commencing as stated above. Provided, however, if the above alternate payment schedule is completed, the payment schedule therein shall govern Your obligation to the Credit Union. Each installment or other payment shall be applied first to interest then due and the remainder shall be applied to late charges and then to reduce the unpaid balance of the loan.

Your first payment will be due on the "Payment Commencing" date set forth above. Thereafter, your payments will be due either (a) on the same day of each month as the "payment commencing" date or (b) on one or more of the days which is a payday for you from The Boeing Company. Your payment date will depend on whether you are repaying this Promissory Note monthly or by payroll deduction. You will make payments each and every month until this Promissory Note is paid in full, even if You have made any credits or payments on this Promissory Note in addition to monthly payments.

If you have elected an automatic payment plan (i.e., payroll deduction or automatic transfer from your Credit Union shares) at time of origination, you will receive an automatic payment rate equal to .50 basis points off the interest rate that otherwise would be charged on the above referenced loan. In the event you discontinue the automatic payment plan or funds are not available for full payment, the Credit Union may adjust your rate to the interest rate it otherwise would have been charged on the above referenced loan. Your payments will not be adjusted should this occur.

This Promissory Note is secured by a Security Agreement, Pledge Agreement or Deed of Trust executed this date, if any, and/or any other Security Agreement, Pledge Agreement, or Deed of Trust that the Credit Union now has or may later have to secure any other loan You have with the Credit Union. You understand that, regardless of the provisions of any other document, Your obligations to the Credit Union under this Promissory Note are not secured in any way by a security interest in any real property which is used or is expected to be used as Your principal residence and the Credit Union hereby waives any such interest insofar as it secures Your obligations hereunder.

If any installment is not paid when due, the Credit Union may, without prior notice or demand, assess a late charge equal to the greater of $5.00 or one and one-half percent of the payment amount not paid.

At its option, the Credit Union may consider You in default under this Promissory Note:
(1) If You do not make any full payment when due; or
(2) If Your employment changes such that it affects Your ability to repay this loan; or
(3) If you have made any incorrect statements to the Credit Union in order to obtain the loan evidenced by this Promissory Note; or
(4) If You do not make all payments when due or are otherwise in default under any other loan or loan agreement You now or may later have with the Credit Union; or
(5) If You become insolvent or are unable to pay Your debts as they mature or You make an assignment for the benefit of Your creditors or any proceeding is commenced by or against You in Bankruptcy Court; or
(6) If You do not comply with any provision of this Promissory Note; or
(7) If an "event of default" occurs under any Security Agreement, Pledge Agreement, or Deed of Trust which the Credit Union now has or may later have to secure this Promissory Note or any other loan You have with the Credit Union.

If You are in default, the Credit Union, without notice, can then demand payment of the entire unpaid balance under this Promissory Note, plus accrued and unpaid interest due. In addition, in the event of default, the balance in Your share savings account may be applied to the unpaid balance of this Promissory Note. The Credit Union will also have such other rights as may be afforded by the laws of the state of Washington.

The Credit Union may accept late payments, additional payments or partial payments, even though marked "payment in full" without losing its rights under this Promissory Note to require all of the unpaid balance to be paid.

The Credit Union may advance funds to protect its interest under this Promissory Note, or pay any tax or fee, but is not required to do so. At the Credit Union's option, those advances will be added to the principal balance of this Promissory Note and Your monthly payments increased so that this Promissory Note is fully paid within the same period as the original amount due.

You and each cosigner, endorser and guarantor agree to pay the Credit Union's reasonable attorneys' fees, foreclosure costs, and other costs of collection in addition to the balance due on this loan if the Credit Union must take any action to collect it, whether or not a lawsuit is commenced.

You and each cosigner, endorser and guarantor agree to remain bound for payment of this loan notwithstanding any extension of time, substitution or release of security or any other indulgence granted to You, and each hereby waive notice of such extension, substitution, amendment, or other indulgence. If suit is brought upon this Promissory Note, You agree that the suit may take place in King County, Washington. You hereby state that no consideration has passed or will pass from You to the endorser for endorsement.

✓ /s/ Charles E. Thomas
Borrower

_____
Co-Borrower

The undersigned hereby unconditionally guarantee to BOEING EMPLOYEES' CREDIT UNION, its successors and assigns, the punctual payment, whether by acceleration or otherwise, of the principal, interest and other amounts provided for in this Promissory Note, and agree to be bound by all terms, covenants and conditions of the Promissory Note and the Security Agreement, Pledge Agreement, or Deed of Trust, if any which secure this Promissory Note. The undersigned acknowledge that they have received and read the Notice to Cosigner furnished by the Credit Union.

✓ _____
Cosigner

✓ _____
Cosigner

STATE OF WASHINGTON
County of Kanabec   ss.

I hereby certify that I know or have satisfactory evidence that Charles E. Thomas _____ free and voluntary act for the uses and purposes mentioned in the instrument and acknowledged it to be _____

Dated: 7/23/93   Notary Public in and for the State of ~~Washington~~ Minnesota residing at Kanabec County

/s/ Marvel Sohl
Notary Public

My appointment expires 10/30/96

MARVEL SOHL
NOTARY PUBLIC-MINNESOTA
KANABEC COUNTY
My Commission Expires Oct. 30, 1996

**BECU**
BOEING EMPLOYEES CREDIT UNION

## CONSUMER VARIABLE RATE ADDENDUM:   CONSUMER LOANS

THIS ADJUSTABLE RATE RIDER is made the __28TH__ day of __JULY__ 19 ___, and is incorporated into and shall be deemed to amend and supplement a Promissory Note dated on the same date given by the undersigned (the "Borrower") to secure Borrower's Promissory Note (the "Note") to BOEING EMPLOYEES' CREDIT UNION (the "Lender") of the same date.

This rider contains provisions allowing for changes in the interest rate and term of the note.

(A)   **Adjustment Dates**

The interest rate you will pay may be adjusted semiannually on July 1 and January 1 each year. Each date on which the interest rate could change is called an "Adjustment Date."

(B)   **Adjustment Amount**

At each Adjustment Date, the interest rate will be adjusted, at the discretion of the Credit Union Board of Directors, to either: (a) a rate equal to __2.0__ percentage points above the 11th District (FHLB) Average Cost of Funds rounded down to the nearest .25% or (b) such lower rate as determined by the Credit Union Board of Directors. The rate will be adjusted on July 1 and January 1 each year based on the Index value in effect for April and October. The 11th District Average Cost of Funds is published by the Federal Home Loan Bank of San Francisco and reflected in the *Wall Street Journal*. If the 11th District Average Cost of Funds ceases to be published at any time during the term of the Promissory Note, the Credit Union shall, at its sole discretion, select an alternative rate (the "New Rate") and a margin above that rate, which will result in approximately the same interest rate being applied as was in effect immediately prior to the cessation, and the New Rate and margin shall be utilized at each Adjustment Date after cessation of publication until the Promissory Note is paid in full.

(C)   **Calculation of Changes**

Any increase or decrease in the Rate will affect the number of monthly payments you will make under the Promissory Note. However, if the amount of the payment is not enough to pay at least the acquired finance charge, the monthly payment on the Promissory Note will be recalculated to be the amount necessary to repay the unpaid balance as will exist on that Adjustment Rate in equal monthly payments including interest over the remaining term of the Promissory Note at the new interest rate.

(D)   **Effective Date of Changes**

Your new interest rate will become effective on each Adjustment Date.

(E)   **Notice of Changes**

You will be notified in writing at least thirty (30) days before the effective date of any interest rate adjustment or change in payment amount. This notice will be mailed to you at your most current address on file with the Credit Union at the time of the mailing.

BY SIGNING BELOW, you accept and agree to the terms and covenants contained in the Adjustable Rate Rider.

_____
Charles E. Thomas

FIRST PREFERRED MORTGAGE OF VESSEL

# ORIGINAL

| | | |
|---|---|---|
| on the vessel(s) " | GLOBAL VILLAGE | " Home Port Seattle, Wa |
| Official Number or Hull ID# | 994536 | |
| dated July 27, 1993 | | Amount of Mortgage $ 250,005.00 plus interest |
| and made by | Charles Edward Thomas 100% | |
| | 1916 Pike Place #653 | |
| | Seattle, Washington 98101 | (hereinafter called "OWNER"), to |
| | Boeing Employees' Credit Union | |
| | P.O. Box 97050 | |
| | Seattle, Washington 98124 | (hereinafter called "MORTGAGEE") |

## WITNESSETH

WHEREAS, the Maker, Owner herein, is the sole owner of the whole of the vessel hereinbefore named and described, (If more than one vessel is mortgaged hereunder, the term "VESSEL" means each such vessel) and is justly indebted to the Mortgagee as evidenced by a Promissory Note/ Loan Agreement/ Retail Installment Contract/ Note and Security Agreement (any of which is hereinafter called "NOTE") in the amount indicated.

AND WHEREAS, Owner has agreed to give this Mortgage as security and has authorized and directed the execution and delivery hereof;

NOW, THEREFORE, in consideration of the promises and for other good and valuable consideration, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the vessel(s) described above, together with masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document being deemed included herein by reference.

TO HAVE AND TO HOLD all and singular the above-described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act of 1920.

Owner agrees to pay said indebtedness and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject hereto.

## ARTICLE I - PARTICULAR COVENANTS OF OWNER

Owner represents, warrants and covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her Certificate of Documentation, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of said Note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of its incorporation and authorized to do business and in good standing in any other State where Owner regularly does business.

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever, except as may herein below be specified, and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transactions.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured, and in at least the amount of the unpaid balance of the Note, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear; all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, nor remove the vessel from the limits of the territorial waters of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

5. Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records; and shall certify quarterly and if Mortgagee requests, monthly that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein. Owner shall not charter the vessel except to persons and for uses lawful for American vessels and then only provided the insurance required hereunder be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or change ownership or control, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurances as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1(b) of Article II.

## ARTICLE II - DEFAULT

1. In any one or more of the following events, hereinter termed "Events of Default", viz:

(a) Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or breach of any warranty of Owner herein or in the Note or the due and punctual performance of any provision of Article I hereof, or attempt to violate Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein or in the Note;

(b) Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every case, Mortgagee may:

(A) Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith;

(B) Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C) Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2. In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3. Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4. The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate provided in the Note; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the Note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said Note and all damages sustained by Mortgagee because of default, shall be repaid by Owner on demand, with interest on all such amounts at the rate provided in the Note; and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgage shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

-3-

## ARTICLE III - POSSESSION UNTIL DEFAULT

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

## ARTICLE IV - SUNDRY PROVISIONS

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Owner herein, "his" shall mean "their".

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name.

_____
Karin I. Kogerup Attorney in Fact For
Charles Edward Thomas

### ACKNOWLEDGEMENT

INDIVIDUAL MORTGAGOR(S)

State of ____Illinois____   County of ____Lake____

On this __27th__ day of __July__, 19_93_, before me personally came and appeared __Karin I. Kogerup Attorney in Fact For Charles Edward Thomas__

to me known to be the person(s) described in and who executed the foregoing Mortgage, and he (they) acknowledged to me that he (they) executed and delivered the same as his (their) free act and deed.

OFFICIAL SEAL
IRMGARD M°NEALLY
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 02-28-97

NOTARY PUBLIC
My commission expires: _____

CORPORATE MORTGAGOR

State of _____   County of _____

On this _____ day of _____, 19_____, before me personally came and appeared _____

to me known to be the same individual who signed the foregoing instrument on behalf of _____ and acknowledged the within instrument to be the free act and deed of the said corporation.

STAMP OR SEAL

NOTARY PUBLIC
My commission expires: _____

Vessel Documentation Office
Marine Safety Office Puget Sound
Port of Seattle, WA

Received for record on __18 AUG 1993__

at _10:15 A_ M and recorded in

Book _93-8_ Instrument __282__

_T.S. Mmdall_
Documentation Officer

In this Security Agreement, the words "YOU" and "YOUR" mean each and all of those who have signed it and includes Your marital community if You are married.

1. **Grant of Security Interest.** You hereby grant to Boeing Employees' Credit Union ("BECU") a security interest in the following property ("the Collateral") which is now in Your possession and is located at _____

1993 BLUEWATER CRUSADER
#BTL46140L293

Any additions and replacements to the Collateral, and any proceeds from the sale of the Collateral, are also covered by this Security Agreement. BECU is authorized to correct the description of the Collateral if it is erroneous or incomplete.

2. **Debts Secured.** This Security Agreement is given to secure the payment of: (a) the loan represented by the Promissory Note made this date and all renewals or extensions of that loan; (b) all other amounts You may owe BECU now or in the future on any other loan; (c) all interest and late charges on all loans, and all expenses of BECU as provided in this Security Agreement or any other agreements between You and BECU; and (d) all collection costs, expenses and attorneys' fees incurred by BECU to collect any sums owed by You or to protect BECU's rights in the Collateral.

3. **Representation of Use.** You promise that You own the Collateral free and clear of all liens and encumbrances and that the primary use of the Collateral is for personal, family or household purposes.

4. **Title, Location and Transfer of Collateral.** Any certificate of title to the Collateral will be delivered to BECU and will show BECU's interest in it. Without BECU's prior written permission, You will not remove the Collateral from the state in which you reside, or sell, lease or otherwise transfer the Collateral, or any interest therein. You must give BECU fourteen (14) days' notice before changing Your address or the address where the Collateral is kept.

5. **Insurance and Taxes.** You promise to keep the Collateral insured for its full value against loss and damage with an insurance company acceptable to BECU. The policy or policies must state that BECU is to be paid if there is a loss. You agree to deliver to BECU proof that this insurance is in place. If the Collateral is lost or damaged, BECU may, at its option, use the insurance proceeds to replace or repair it, or to repay any amounts owed by You.
You must pay all taxes and fees on the Collateral. BECU may advance funds to insure the Collateral, or pay any tax or fee, but is not required to do so. At BECU's option, those advances will be added to the principal balance of the loan and Your monthly payments increased so that the loan is fully paid within the same period as the original amount due.

6. **Repairs, Inspection, and Payment of Charges.** You will keep the Collateral in good condition and repair and free from charges or liens. You will promptly pay for all repairs, storage, taxes, licenses, and any other charges. BECU may inspect the Collateral without notice whenever the Collateral is located.

7. **Default.** Time is of the essence of this Security Agreement. At BECU's option, all amounts owed by You to BECU shall become immediately due and payable without notice or demand, and BECU may immediately pursue its remedies under this Security Agreement if you are in default under the terms of the Promissory Note or if the Collateral is repossessed, seized or levied upon under any legal or governmental process.

8. **Remedies.** If an Event of Default occurs, BECU may exercise all remedies provided by law. These remedies include, but are not limited to: (a) Demand that You deliver the Collateral to BECU or make it available to BECU at a place reasonably convenient to both parties, at BECU's option; and (b) BECU may enter any premises where the Collateral is located and take possession of the Collateral without notice, demand or legal proceeding; and (c) After ten (10) days' notice to You, BECU may sell or otherwise dispose of the Collateral and apply the proceeds to any outstanding loans between You and BECU; and (d) You agree to pay on demand all expenses incurred by BECU to protect, sell or dispose of the Collateral, including, but not limited to, the expenses set forth in Paragraphs 5 and 6 of this Security Agreement and attorneys' fees incurred by BECU for collecting any amounts owed by You to BECU, or for protecting or defending the Collateral or BECU's interest therein, even if suit is not commenced. You also agree to pay all court costs and costs of public officials.

9. **Co-signers Deficiency Balances.** You and all co-signers, endorsers and guarantors agree (1) to remain bound by any obligation secured hereby, notwithstanding any extension of time, substitution or release of security, or failure to give notice of any such extension, substitution or other indulgence and (2) to pay any deficiency balance remaining after application of the net proceeds of sale of the Collateral to any debt secured by this Security Agreement.

10. **Notices.** Whenever it is stated under this Security Agreement that notice be provided, the parties agree that the notice period commences when notice is mailed by first class or certified mail to BECU at its address — or to You at Your last address appearing on the records of BECU.

11. **Miscellaneous.** No waiver or modification by BECU of any of the terms or conditions of this Security Agreement is effective unless in writing. BECU's waiver or indulgence as to any required performance by You shall not constitute a waiver or indulgence as to any required future performance.

**YOU HAVE CAREFULLY READ THIS ENTIRE SECURITY AGREEMENT, FULLY UNDERSTAND ITS PROVISIONS, AND AGREE TO BE BOUND BY ALL ITS TERMS, CONDITIONS, AND COVENANTS.**

_[signature]_   7/23/93               _[signature]_
Date                                   Borrower
                                       Co-Borrower


BOEING EMPLOYEES' CREDIT UNION

# CONSUMER VARIABLE RATE ADDENDUM: CONSUMER LOANS

THIS ADJUSTABLE RATE RIDER is made the __28TH__ day of __JULY__ 19 ___, and is incorporated into and shall be deemed to amend and supplement a Promissory Note dated on the same date given by the undersigned (the "Borrower") to secure Borrower's Promissory Note (the "Note") to BOEING EMPLOYEES' CREDIT UNION (the "Lender") of the same date.

This rider contains provisions allowing for changes in the interest rate and term of the note.

(A) **Adjustment Dates**

The interest rate you will pay may be adjusted semiannually on July 1 and January 1 each year. Each date on which the interest rate could change is called an "Adjustment Date."

(B) **Adjustment Amount**

At each Adjustment Date, the interest rate will be adjusted, at the discretion of the Credit Union Board of Directors, to either: (a) a rate equal to __2.0__ percentage points above the 11th District (FHLB) Average Cost of Funds rounded down to the nearest .25% or (b) such lower rate as determined by the Credit Union Board of Directors. The rate will be adjusted on July 1 and January 1 each year based on the Index value in effect for April and October. The 11th District Average Cost of Funds is published by the Federal Home Loan Bank of San Francisco and reflected in the *Wall Street Journal.* If the 11th District Average Cost of Funds ceases to be published at any time during the term of the Promissory Note, the Credit Union shall, at its sole discretion, select an alternative rate (the "New Rate") and a margin above that rate, which will result in approximately the same interest rate being applied as was in effect immediately prior to the cessation, and the New Rate and margin shall be utilized at each Adjustment Date after cessation of publication until the Promissory Note is paid in full.

(C) **Calculation of Changes**

Any increase or decrease in the Rate will affect the number of monthly payments you will make under the Promissory Note. However, if the amount of the payment is not enough to pay at least the acquired finance charge, the monthly payment on the Promissory Note will be recalculated to be the amount necessary to repay the unpaid balance as will exist on that Adjustment Rate in equal monthly payments including interest over the remaining term of the Promissory Note at the new interest rate.

(D) **Effective Date of Changes**

Your new interest rate will become effective on each Adjustment Date.

(E) **Notice of Changes**

You will be notified in writing at least thirty (30) days before the effective date of any interest rate adjustment or change in payment amount. This notice will be mailed to you at your most current address on file with the Credit Union at the time of the mailing.

BY SIGNING BELOW, you accept and agree to the terms and covenants contained in the Adjustable Rate Rider.

SENT BY:B E C U SEATTLE ; 7-23-93 ;12:47PM ;    LOAN DEPT NORTH→    6126793820;# 2/ 6

# BOEING EMPLOYEES' CREDIT UNION
## "NOTICE OF RIGHT TO CANCEL"

| NAME |
|---|
| CHARLES THOMAS |

| PROPERTY ADDRESS | STREET | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
|  |  |  |  |  |

ACKNOWLEDGES THE RECEIPT OF TWO COPIES OF THIS "NOTICE OF RIGHT TO CANCEL"

| SIGNATURE | DATE |
|---|---|
| Charles E Thomas | 7/23/93 |

## YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a lien, deed of trust, mortgage, and/or other security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. The date of the transaction, which is _____; or
2. The date you received your Truth-in-Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the lien, deed of trust, mortgage, and/or other security interest is also cancelled. Within twenty (20) calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the lien, deed of trust, mortgage, and/or other security interest on your home has been cancelled and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at the Boeing Employees' Credit Union

| 7700 East Marginal Way So. | Seattle | WA | 98108 |
|---|---|---|---|
| STREET | CITY | STATE | ZIP CODE |

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Joint owners may have a right to cancel this transaction. A decision to cancel by one owner is effective for all owners. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

## I WISH TO CANCEL

| SIGNATURE | DATE |
|---|---|
|  |  |

## BOEING EMPLOYEES' CREDIT UNION
P.O. Box 97050
Seattle, Washington 98124-9750

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.0000 % | 129,780.20 $ | 250,000.00 $ | 379,780.20 $ |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 180 | 42,109.89 | 8/28/93 AND THE 28TH OF EACH MONTH THEREAFTER |
| - | | |
| - | | |

Your loan interest rate is a:
☐ Fixed Rate  ☒ Variable Rate: Your loan contains a variable rate feature. Disclosures about the variable rate have been provided to you earlier.

Insurance: Credit Life and/or Credit Disability Insurance is not required to obtain credit, and will not be provided unless you have signed a Credit Life and/or Credit Disability Insurance application provided to you earlier, and agree to pay the additional cost.

| Type | Premium | | Type | Premium |
|---|---|---|---|---|
| Credit Life | | | Credit Disability | |

Security: You are giving a security interest in: XXX share/deposit account held in credit union.
XXX Collateral securing other loans with us may also secure this loan.  XXX The goods or property being purchased.
☐ (Other) _____

Filing fee: _____

Late Charge: If a payment is late, you may be charged $ 5.00 or 1½ % of the payment due, whichever is greater, where allowed by state law.

Prepayment: If you pay off early, you will not have to pay a penalty.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

ITEMIZATION OF AMOUNT FINANCED
$ 250,000.00 Amount given to you directly
$ 0.00 Amount paid on your account
Amount paid to others on your behalf:
$ _____ to _____
$ _____ to _____
$ _____ to government officials
$ 5.00 for credit report
$ _____ Prepaid finance charge

I/We Acknowledge Receipt of this Disclosure Statement

_Charles E. Thomas_ (signature)

_____
Member's Name

Mailed  7/28/93   LC   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
Delivered to Member: _____  7/23/93

OMB No. 2115-0110



# UNITED STATES OF AMERICA
### DEPARTMENT OF TRANSPORTATION
### UNITED STATES COAST GUARD

# Certificate of Documentation

| VESSEL NAME | OFFICIAL NUMBER | HOMEPORT |
|---|---|---|
| GLOBAL VILLAGE | 994536 | SEATTLE, WA |

| GROSS | NET | LENGTH | BREADTH | DEPTH | HULL MATERIAL | SELF PROPELLED |
|---|---|---|---|---|---|---|
| 26 | 21 | 49.5 | 14.0 | 5.7 | FRP | YES |

| PLACE BUILT | YEAR BUILT |
|---|---|
| MORA MN | 1993 |

| OWNER | THIS VESSEL IS PRESENTLY DOCUMENTED FOR |
|---|---|
| CHARLES EDWARD THOMAS | RECREATION |
| COMPLETE RECORDS ON FILE AT HOMEPORT | |

**MANAGING OWNER**
CHARLES EDWARD THOMAS
1916 PIKE PLACE
#653
SEATTLE, WA 98101-1013

**RESTRICTIONS**
NONE

**ENTITLEMENTS**
NONE

**REMARKS**
NONE

| ISSUED AT | SIGNATURE AND SEAL |
|---|---|
| SEATTLE, WA | *Marilee Meyer* |
| ISSUE DATE  JULY 20, 1993 | MARILEE MEYER |
| THIS CERTIFICATE EXPIRES ON THE LAST DAY OF JUL 94 UNLESS RENEWED BY DECAL ON REVERSE | DOCUMENTATION OFFICER |

# CIVIL COVER SHEET

00-6229
CIV-UNGARO-BENAGES

MAGISTRATE JUDGE
BROWN

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| BOEING EMPLOYEE'S CREDIT UNION, a Washington corporation | P/V GLOBAL VILLAGE, O.N. 994536, Her engines, tackle and appurtenances, In Rem, and CHARLES E. THOMAS, In Personam |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)
A) Broward  10:00cv6229 / CCB Brown

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Nils Linfors, Jr.   Tel: 305-670-2525
Horr, Linfors, Skipp & Novak, P.A.
9100 S. Dadeland Blvd, Suite 1001
Miami, Florida 33165

ATTORNEYS (IF KNOWN)

(d) CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, (BROWARD,) PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Case Only)

(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated of Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Foreclosure of First Preferred Ship Mortgage pursuant to Ship Mortgage Act.

IVa. ___2___ days estimated (for both sides) to try entire case

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTACT | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
|  | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reappointment |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| [X] 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | A PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personnel Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 140 Negotiable Instrument | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 640 R R & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending B | ☐ 660 Occupational Safety/Health | B SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 350 Motor Vehicle | ☐ 380 Other Personnel Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | A LABOR | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 160 Stockholder's Suits | ☐ 360 Other Personal Injury |  | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract |  |  | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability |  |  | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | ☐ 740 Railway Labor Act | A FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment | Habeas Corpus | ☐ 791 Employee Ret Inc Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General * |  |  |  |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other * |  |  | ☐ 890 Other Statutory Actions * |
| ☐ 290 All Other Real Property |  | ☐ 550 Civil Rights * A or B |  |  | * A or B |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed From State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Refiled
- [ ] 5 Transferred from another district (Specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P 23

DEMAND $ $200,000

☐ Check YES only if demanded in complaint
JURY DEMAND: ☐ YES  [X] NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions):
JUDGE _____   DOCKET NUMBER _____

DATE 2/16/00   SIGNATURE OF ATTORNEY OF RECORD /s/ Nils Linfors

UNITED STATES DISTRICT COURT
S.F. I-2
REV 9/94

FOR OFFICE USE ONLY: Receipt No. 81763
Date Paid: 2/16/00
Amount: 150.00
M/fp: